IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, | )<br>)<br>) **Case No.: 3:22-CR-00011-03** |
| Plaintiff, | )<br>) |
| vs. | ) **DEFENDANT'S SENTENCING**<br>) **MEMORANDUM** |
| Melanie Ann Quick, | )<br>) |
| Defendant. | ) |

**INTRODUCTION**

[¶ 1]   The Defendant, Melanie Ann Quick (Ms. Quick), has pled guilty, by way of plea agreement, to Count One of the Indictment charging her with: Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2, filed on January 13, 2022. Ms. Quick's Sentencing Hearing is scheduled for January 18, 2023 at 11:00 a.m. Ms. Quick, by and through her attorney, Adam Justinger, submits this Sentencing Memorandum to address issues pertinent to sentencing in her case.

**PLEA AGREEMENT/GUIDELINE CALCULATION**

[¶ 2]   Parties involved in this matter signed a written plea agreement pursuant to Fed.R.Crim.P. 11(c)(1)(A) and (B). In the plea agreement, the parties have agreed to, under U.S.S.G. § 2D1.1(c)(3), a base offense level of 34. Furthermore, the United States will recommend a downward adjustment of three levels for acceptance of responsibility and timeliness of notification of Defendant's intent to enter into a guilty plea, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E.1.1(b). The Presentence Investigation Report also lists a base offense level of 34, which

1

would result in a total offense level of 31 after all of the adjustments. Both U.S. Probation and the parties agree that Ms. Quick is a Criminal History Category VI, with thirty- two (32) criminal history points. The guideline imprisonment range for a total offense level of 31 and a criminal history category of VI is **188-235 months**. U.S. Probation and the parties also both agree there is a fifteen (15) year minimum mandatory.

[¶ 3]   The plea agreement specifies that the United State's will argue for a sentence at the low end of the applicable Guideline range, or the minimum mandatory, whichever is greater. Ms. Quick will be arguing for a sentence she believes is fair and just given the circumstances and the factors outlined in 18 U.S.C. § 3553(a).

## LAW AND ARGUMENT

### I. The Court shall consider the factors delineated in 18 U.S.C. § 3553(a), which Ms. Quick believes warrants a variance from the applicable Guideline range.

[¶ 4]   On January 12, 2005, the United States Supreme Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment to the United States Constitution. See United States v. Booker, 543 U.S. 220 (2005). As a result, this Court must fashion an appropriate sentence with consideration of the advisory sentencing guidelines. Id. Consistent with Booker, the Sentencing Reform Act requires a sentencing court to consider the guideline ranges, in conjunction with the enumerated factors of 18 U.S.C. § 3553. Id. at 245-246. The ultimate goal is a sentence that is not greater than necessary to satisfy the statutory purposes of sentencing, with due consideration to the characteristics of the offender and circumstances of the offense. See United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007); Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007).

[¶ 5]   While the guidelines serve as a starting point for the Court's analysis, 18 U.S.C. § 3553(a)(1) requires the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and the statute trumps any guideline or policy statement to the contrary. See Stinson v. United States, 508 U.S. 36, 38, 44, 45 (1993); United States v. LaBonte, 520 U.S. 751, 757 (1997). Specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering may now be considered. See Rita, 551 U.S. at 364-365. Matters such as age, education, mental or emotional condition, and medical conditions, including drug or alcohol addiction are matters that § 3553(a) authorizes sentencing judges to consider. Id.

[¶ 6]   Ms. Quick will be arguing for a variance from the applicable guidelines based on several factors including the factors delineated in 18 U.S.C. § 3553(a). Ms. Quick respectfully requests the Court consider these factors, along with the terms outlined in the Plea Agreement, Plea Agreement Supplement, Sentencing Memorandum, and Sentencing Memorandum Supplement; when imposing sentence.

### A.  Nature and Circumstances of the Offense.

[¶ 7]   The nature of the offense is indicated by the total offense level discussed above. The parties and U.S. Probation have agreed that Ms. Quick's role in this conspiracy involved at least 5 kilograms of a mixture of substance containing methamphetamine, but was less than 15 kilograms. This is based on the amount that was reasonably foreseeable to Ms. Quick for her role in the offense. See United States v. Walker, 688 F.3d 416, 421 (8th Cir. 2012).

[¶ 8]   Ms. Quick's involvement in the instant offense started as a way to help her friend. Ms. Quick would wire money and pick up and drop off methamphetamine at the direction of her

friend to other co-conspirators. At the time, Ms. Quick was working at McDonalds. Her friend offered her money to continue to wire money and transport methamphetamine. Ms. Quick's involvement in the instant offense was short-lived. She began her involvement in September 2020 and seized involvement due to her arrest in February 2021. Ms. Quick's participation was in large part a result of her loyalty to her childhood friend and for a supplemental source of income.

[¶ 9]   Although Ms. Quick acted at the direction of her friend, it does not justify her unlawful actions. Ms. Quick regrets her decision to get involved in the instant offense. Prior to her involvement, Ms. Quick was just beginning to get her life back on track. She was employed, had stable living, a good familial support system, and was sober. Ms. Quick's loyalty and desire for quick money crushed all of the progress she made after her release from prison. Nonetheless, Ms. Quick has accepted responsibility for her actions in this case and voluntarily pled guilty to the Indictment.

      **B.  History and Characteristics of Defendant.**

[¶ 10]   Ms. Quick's childhood was anything but easy. She was born in Missouri and her parents never married. Ms. Quick's father was unemployed and would sell drugs while her mother would work to support the family. Ms. Quick's mother underwent surgery and as a result, began to abuse prescription medication. She left Ms. Quick in Missouri with her father while she attended treatment in Minnesota. Eventually, Ms. Quick's parents separated and Ms. Quick was moved back to Minnesota with her mother. In Minnesota, the family resided with Ms. Quick's maternal grandmother. Ms. Quick's grandmother was also an addict and would verbally abuse her. Ms. Quick would later move to California with her mother and new husband before returning to

Minnesota.

[¶ 11]   Not only did Ms. Quick have a hard upbringing, but she also struggled with both her mental and emotional health. When Ms. Quick was in third grade, she was diagnosed with attention deficit hyperactivity disorder and low self-esteem. She also struggled with verbal abuse from her grandmother as mentioned above. When she was younger, she also fell out of a tree and suffered a traumatic brain injury and almost died as a result.

[¶ 12]   The struggle however, did not stop there. In 2013, Ms. Quick dated her first boyfriend who would physically abuse her. Ms. Quick was beaten several times by him until he was finally arrested. In 2015, Ms. Quick began seeing someone else. This boyfriend would also physically abuse her. Her boyfriend would beat her with his fists and even stabbed her on one occasion. As a result of the physical abuse, Ms. Quick was later diagnosed with posttraumatic stress disorder (PTSD), anxiety, and depression. Ms. Quick's struggle with her mental and emotional health has caused her to attempt suicide on three different occasions throughout her life.

[¶ 13]   Ms. Quick's struggles early in her life caused her to turn to alcohol and drugs. Ms. Quick's earliest drug use began when she was only twelve years old. Her substance abuse would continue until the age of twenty six. Her substance abuse was due in large part to her abuse and to hide the guilt and shame she felt. While incarcerated, Ms. Quick obtained her Thinking for Change certificate on December 12, 2019. Ms. Quick has remained sober ever since and is extremely proud of this accomplishment.

[¶ 14]   Despite the challenges Ms. Quick has faced thus far in her life, she has a strong desire to change. Ms. Quick completed her GED in November of 2017 and completed a cosmetology class in December of 2018. While serving a term of imprisonment at the Minnesota Department of

Corrections, Ms. Quick was employed. She grew to enjoy having a job and worked in several different areas, which included textiles, work crew, and food service.

[¶ 15]  After being paroled from prison, Ms. Quick was employed at McDonalds. She was the department manager from March 1, 2020 until December 16, 2021. During this time, Ms. Quick continued to remain sober and had stable living arrangements. Ms. Quick was saving up for an apartment of her own. However, Ms. Quick was ultimately arrested primarily as a result of her involvement in this case and has been detained ever since. Despite Ms. Quick being arrested and detained in February 2021, McDonalds did not terminate her employment until December 2021; hoping that Ms. Quick could return after her sentence. McDonalds has indicated that they would rehire Ms. Quick because she is both reliable and accountable.

[¶ 16]  Ms. Quick has also built positive relationships to continue to help her succeed after her release. Ms. Quick has two successful friends that she speaks with on a regular basis. Her mother is also a positive influence in her life and is very supportive of Ms. Quick. It is anticipated that her mother will be present at sentencing to show support for Ms. Quick. While Ms. Quick has been incarcerated, she has remained employed, she keeps to herself, attends church services, and maintains steady contact with her family.

### C.  The Need for the Sentence Imposed.

[¶ 17]  Ms. Quick understands the seriousness of the offense she committed. While Ms. Quick understands she will be serving a period of imprisonment, she has already begun to think about her future. This includes things like her sobriety, familial relationships, and employment opportunities. At twenty eight years old, Ms. Quick has a lot of life left to live and is determined to better herself upon her release. An extremely long prison term would only hinder Ms. Quick's

goals and would not be beneficial to society as a whole.

### D. The Kinds of Sentence and the Sentencing Range.

[¶ 18]   In considering the factors outlined in 18 U.S.C. § 3553(a), the minimum mandatory sentence, the plea agreement, and several other factors, Ms. Quick believes her recommendation at sentencing will be appropriate.

### E. Pertinent Police Statements.

[¶ 19]   There are no known pertinent policy statements applicable to Ms. Quick at this point in time.

### F. Avoiding Unwanted Sentence Disparities

[¶ 20]   It appears that only one of Ms. Quick's co-defendants have been sentenced in this matter. Mary Thompson received a sentence of 100 months. Ms. Quick believes that her sentencing recommendation will not result in an unwanted sentence disparity.

### G. Restitution

[¶ 21]   Restitution is not applicable in this case. 18 U.S.C. § 3663.

## CONCLUSION

[¶ 22]   In conclusion, Ms. Quick respectfully requests that the Court consider all of the factors outlined above, along with the Plea Agreement, Plea Agreement Supplement, Sentencing Memorandum, and Sentencing Memorandum Supplement when imposing sentence. After considering all of the information, Ms. Quick believes the sentence she is requesting would be sufficient, but not greater than necessary to serve the purposes of sentencing.

Dated this 11th day of January, 2023.

                                                _____
Adam Justinger (ND ID #08635)
SW&L Attorneys
4627 44th Avenue South, Suite 108
Fargo, North Dakota 58104
Telephone: (701) 297-2890
Fax: (701) 297-2896
adam.justinger@swlattorneys.com
ATTORNEYS FOR DEFENDANT

8